Good morning, Your Honors. Michael Hassan for Defendant and Appellant EZ-FLO. With the permission of the Court, I'd like to reserve three minutes for rebuttal. I'll keep my eye on the clock. Thank you. Your Honor, the specific language of 28 U.S.C. Section 1332 D. 11 B.I. Controls, that part of CAFA, the defines a mass action and makes removable as a mass action, a lawsuit that advances the, quote, monetary relief claims of 100 or more persons, end quote, that, quote, are proposed to be tried jointly on the ground that the plaintiff's claims involve common questions of law and fact, end quote. The critical language, again, is a lawsuit that advances the, quote, monetary relief claims of 100 or more persons. The statute does not say 100 or more persons seeking monetary relief. In a nutshell, that is the insurer's entire argument. Under their reading of CAFA, there must be 100 or more persons seeking monetary relief, but that is not the language of the statute, and for obvious reasons. Congress elected to include the relevant language as part of CAFA, the Class Action Fairness Act, thus the language that the plaintiffs that, quote, plaintiff's claims involve common questions of law and fact, Congress is hearkening to Rule 23, commonality, typicality, superiority. That is what this Court was referring to in provides for the removal of mass actions that do not qualify as traditional class actions, but otherwise meet its criteria. Just as a class action is often filed by a single individual on behalf of many, Congress focused on the monetary relief claims of 100 or more persons, a nod to the numerosity requirement of Rule 23, not on the number of people seeking such monetary relief on their behalf. The 145 homeowners named in Exhibit 1 to the second amended complaint could have selected a single member of their class to bring this lawsuit on their behalf. It would still be an action advancing the monetary relief claims of 100 or more persons. The fact that there are 26 insurers bringing this lawsuit as sub-regees of those 145 homeowners insurance is no different. Well, what does it mean to be a sub-regee? Is the, have the 26 insurance companies fully paid off their claims of the 145 homeowners? Your Honor, discovery has not commenced in this case, unlike the Zari case that it was subsequently related to. We don't know whether they have actually paid those claims. We have had the representation made that that is what has happened. We have not yet received copies of the insurance policies under which they are setting forth. What we do know is that as sub-regees, they have specifically listed these 145 people by name, by address, by the specific amount of damage each individually suffered, and that their claims, by being a sub-regee, are entirely derivative of the homeowners. If the homeowners did not have standing, they would not have standing. If a homeowner has, we have a defense to a homeowner. No, if they've paid, that's the nature of being, of subrogation. If they've paid off the claims of the homeowners, they step into the homeowner's shoes, these 26 insurance companies. That's true, but the defense to those claims remains the individual defense to those homeowners' claims. If, for example, Your Honor, Mr. Zari, each of these claims involve a supply line with plastic coupling nuts at the end. We've maintained that they were over-tightened and, in the process, cracked by brute force to tighten them. That's what caused the leak. The plaintiffs maintain it's a design defect. The evidence in the record so far in the lower court is that they fail at the rate of, we may get claims, not that they fail, claims at the rate of about one for every 175,000 that are made. So we do not buy into the design defect claim. But if a homeowner were to testify in deposition, when I bought this home, I removed every supply line with a plastic coupling and only put in metal, and said this plastic coupling hose you're showing me did not come from my house, it could not have come from my house, that testimony would be devastating to the insurer's attempt to recover on a subrogation claim for that homeowner. They don't, by paying the claim, remove the homeowner out of the equation and leave the defendant without any way to defend against the claim. Right, but is that, how do you distinguish the Supreme Court case, Mississippi X-Rail Hood versus AU, optomeric? The language in that case is, there's several pieces of, in that case that are important. The court focused, in part, on the administrative nightmare in an X-Rail action, where the state of Mississippi says, certainly there must be 100 or more people that have been injured by this. We don't know who they are, we don't know where they are, we don't know what their claims are, but go with us on this. And the Supreme Court said, no, no, no. That would be an administrative nightmare. We're not dealing with that here. We know who they are, where they are, what their claims are. You can distinguish the facts of the case, the nature, but the language of the case. It says, thus, just as it is used in Rule 20, the term persons, in Section 1332, refers to the individuals who are proposing to join as plaintiffs in a single action. And throughout the opinion, it talks about the fact that it's the plaintiffs. The line, Your Honor, there's a line in Optronics where the Supreme Court says at page 738, had Congress wanted CAFA to authorize removal of representative actions brought by states as sole plaintiffs on respondent's theory, it would have done so through the class action provisions, not the mass actions provisions. Here, that language would be adapted to read, had Congress wanted CAFA removal of mass actions to be limited to cases with 100 or more named plaintiffs, it would have not provided for mass actions to be removable where the monetary relief claims of 100 or more persons were at issue. That is the language that the Court was referring to is not the language in the statute. It reminds me, Your Honor, and I realize this is what happens when we use different fact situations. I removed a case to federal court once under RESPA, and received a sua sponte notice for a hearing on why it shouldn't be remanded because of numerous cases saying jurisdiction under RESPA is concurrent. And that, in those cases, was true. The cases that said that, those sections of RESPA had concurrent jurisdiction. My case dealt with a section with exclusively federal court jurisdiction. So all of those cases that broadly stated jurisdiction under RESPA is concurrent simply didn't apply. That was not the facts of my case. It was not a concurrent jurisdiction section. When the Supreme Court is a focused on XREL actions, parents patriae actions, where we have no idea who these people are. They are unnamed, unknown. That is a very different situation than 145 people that, on the caption of the complaint, states, we are bringing this action as subrogies of these 145 people listed in Exhibit A, which is no different than if they had said in the caption, as subrogies of the 145 people. But that wouldn't make them necessarily named plaintiffs. That's true, Your Honor. I mean, I'm looking at page 743 of, I'll call it the Hood case, you know. Okay. And I quote, they're talking about the definition of the word plaintiff. And it's, quote, it certainly does not mean anyone named or unnamed whom a suit may benefit. And, Your Honor, understand the language is overly broad. It did not have a subrogie claim before it. And it did not, therefore, focus on this specific language as it's written. Right. But Hood also said that the real party of an interest is not the applicable subrogie. We, again, are not doing this based on real party of interest. It is not because they are the real party in interest that this becomes relevant. It is because that it is seeking the monetary relief claims, the number of claims, the claims being sought are for 100 or more persons. Let me ask you this. Do you concede that the only plaintiffs in this lawsuit are the 26 insurance companies? Yes. Well, why doesn't that do you in? Because, Your Honor, for the let's look at Zari. The one thing the parties agree on in this case is that in the Zari action, there are two insurers, Liberty Mutual as subrogie of Alexander Zari and Western Mutual as subrogie of Alexander Zari. We call that, both parties call that the Zari action, not Liberty Mutual, not Western Mutual, not some other name. It's the Zari action. How many insurers are named plaintiffs? Two. Two plaintiffs. How many people on whose behalf are monetary relief claims being sought? One. Zari. There's just one person on whose behalf monetary relief claims are advanced. It is the monetary relief claims of Zari. One person, two plaintiffs seeking the relief for the one person. This is the flip side. So now you have 26 plaintiffs seeking monetary relief claims on behalf of 145 persons. They do not have any rights on their own. They have no individual claims against the EZ Flow. The insurers have no individual claims. They are entirely derivative of those rights. And we've quoted that. Do you have any post-Hood case that supports your position? That their claims are derivative or that the, that That they meet the mass actions. That's why we asked this Court to grant permission for appeal. Even the district court, Judge Fitzgerald noted, that Obtronics is not the Hood case, your Honor, is not directly on point. It does not deal with this fact pattern and nor have the parties found or decided to. So your answer is no, there is no case. That's to our knowledge. That's what, that's the first court to address. CAFA mass action removal in a subrogation context is this court. Why didn't the individuals file the claims if they possessed them? Your Honor, there, they got their, there were two ways that they could go around about getting their claims covered. One is to submit them to EZ Flow. And we did pay claims when that happened where we felt there was a problem that we were And that was resolved. There were probably, probably not all homeowners could get their claims so readily resolved. Whereas if they just submitted them to the insurance company, the insurance company would pay them and then go after you for the product. So the, what you consider the plaintiffs here no longer own the claims? The, the home, the, the claims have been assigned by contract from the homeowners to the individual insurance companies. That is no different than if, if everyone physically injured at the Las Vegas shooting, all 489 injured and 58 killed, assigned their claims to me. I am now have the claims of 547 people that I am advancing, but it's their, their claims I'm advancing on their behalf. And you would be the plaintiff? And I would be the plaintiff. And they had given you their claims? They would give me those and it would be, but I am now seeking monetary relief on behalf of more than 100 persons. I, the fact that, I don't think CAFL was written, Congress meant to allow this type of gamesmanship. Congress did not intend. This isn't gamesmanship, this is the way insurance works. And the, when you talk about the assignment of contract, what, what assignment of the claim that is in a contract where they're getting paid and they release, release their claim against the insurance company and also assign their claim to the insurance company to pursue the manufacturer. Absolutely, Your Honor, but they then don't get together as 26 people advancing 145 claims for property damage across 16 states. Why wouldn't they? They're alleging the same product defect. Well, I don't want to, we, there are reasons for that, Your Honor. For example, one of the things that every one of these states have is a venue clause that requires that the claims of any property damage suffered at a home in those states be tried in the county where the property is located. So they don't tend to get together and just flagrantly violate the venue statutes. That is not, that is something that will be argued later on, but it is something that is not, that, that's what prevents this. It would be possible if they were all insurers for Deep Horizon, they're all right there on the Gulf, it's all right there and the properties are there and the insurers are there and the plaintiffs are there, but to try and say a San Bernardino Superior Court has jurisdiction over a small claims matter in Pennsylvania that should be tried in the county where it's located, that's not common. You know, the problem I see with this case, just to give you an idea, is the things that are contrary to the theory you're advancing. Now, you know, I understand saying, well, they were thinking about something different. It was a different kind of problem they were writing about. But when we follow a Supreme Court case, it's difficult to say, well, disregard all the things they said in the case. They were really thinking about a different kind of problem and they shouldn't have said those things the way they did. They should have written the opinion differently. Well, I think in that circumstance, in most cases, we would have to say, you know, you have a good argument. You ought to go back to the Supreme Court and say, you know, what you said about the state as the parent's patriarch, whatever it is, the state, what you said about that is entirely different in nature from a subrogation claim. And, you know, this overly broad language, you ought to say, really didn't mean it to apply to other classes of cases. But I don't think that we're in a position to say, you know, they just wrote an overly broad thing. Their language was ill advised. They shouldn't have said what they said, which I could say about a lot of their cases. But usually, not always, usually we can't disregard so much fairly clear language. And, Your Honor, I really think the focus is the statute. The language of the statute, the Supreme Court was dealing because people weren't named, because they had no idea who they were, where they were, on the administrative nightmare part. When it dealt with the monetary relief claims of 100 or more persons, it later would refer to this as 100 named people. That isn't what the statute says. They were focusing on that nightmare part. That's the way the Supreme Court has interpreted it. And as Judge Reinhart says, we're generally bound by what the Supreme Court says. I, with due respect, I really don't know how the language that says seeking the monetary relief claims of 100 or more persons, as opposed to if Congress meant 100 people, that's all they had to say. If Congress meant, we don't mean the claims of 100 people, which is the order we've structured it in, in simple grammatical English. But we mean 100 people bringing claims for monetary relief. That's what we meant. 100 people. That would have been the easiest thing in the world to have written. That isn't what the statute says. And it's part of Canada. One more question. I know we've gone over four minutes, but we will also give you another two minutes rebuttal. There's something you said a minute ago that I didn't follow. You said there was, they were circumventing the venue requirements by bringing them all together. Yes, Your Honor. Okay, but let me ask you this. The company's located in Ontario, and they filed in San Bernardino Superior Court, which is where, which encompasses Ontario, and it was removed to the central district. So I don't see how they're circumventing venue by, and maybe you can explain to me, but I don't see how they're circumventing venue by doing this. We didn't, we didn't brief that part of this, Your Honor, because it's not part of this issue on appeal. Right, but you've raised it, and I'm curious. We brought a motion in the trial court on that issue, and it became convoluted as to how the court wanted us to present that issue procedurally and decided that since he did not have the power to send cases out of state, he was just going to let it go for now. But the statutes for, if he, if I owned a home, if I was one of these 145 people, and I owned a home in Pennsylvania and had this water damage, my, the local statute would say, Pennsylvania has a statute that says, any claims for property damage, which this is, must be brought and tried in the county where the property is located. That's, California has the same thing. It's for obvious reasons. You need to inspect the house. You need to have the witnesses there. That's why this becomes relevant, is all of these people are now where the action is pending. When you consolidate cases from 116, from 16 different states, who knows how many different counties, 145 different properties, and put them all in one place, that's the administrative nightmare. Now, to try and deal with discovery and with, what do you do with these statutes? Yeah, how does being in federal court change the problem? It doesn't, it, well, one way it changes it is the federal court would have the power to transfer to the courts where the property is located. The state court said, I don't have that power. The federal court would. So it could say, I'm going to transfer it from here to the Eastern District of Pennsylvania, to the district court in, this district court in Texas. It could spread them back to where they belong, where the witnesses are, where the property is. We can't do that in the state court proceeding. Forgive me. And then, Judge Reinhart, I think you had asked me one, we're asking one other question as well. Okay. I think that. I was just trying to get you off stage for a while. All right. Thank you very much. May I please the court? The, in this particular case, the terms plaintiff and sub-regor have very different and discrete meanings. And yet here, the appellant is asking this court to blend them together, to convert the sub-regors into actual plaintiffs for the purposes of meeting the numerosity requirements of 1332 D11B1. The district court rejected such a notion and so should this court. Mr. Hassan began with a recitation of the statutory provision, which says a mass action is any civil action which monetary relief claims of a hundred or more persons are proposed to be tried jointly. And the language goes on, but in the Mississippi case, the court interpreted that section by inserting the names as named plaintiffs. In multiple times in the Mississippi case, the Supreme Court makes it clear that the hundred or more persons is a reference to the named plaintiffs. Now, in this case, the appellant tries to get around that by saying that the, we're really talking here about monetary relief claims of a hundred or more plaintiffs, we focus on the sub-regors, the individual homeowners whose claims have already been paid by the insurer sub-regis. And therefore, the insurer sub-regis have now have the right to pursue recovery of those monies from the allegedly responsible party. The insurers themselves are not parties in this case. Do they have any financial interest at this point or have they been paid in full by the insurance companies? They have no financial interest whatsoever, Your Honor. That was very, the complaint was very carefully pled. These insureds are not seeking recoveries of their deductibles. They have no uninsured losses. The only losses that are at issue in this case are the losses that have been paid by the insurance companies. So there are really only 26 plaintiffs then, is that what you're saying? That is correct, Your Honor. Only 26. Only 26 real parties in interest. That's correct. Under federal law, the insurers would be the real parties in interest, not the insureds. The insureds have no skin in the game, as it were, in this matter. So why join in this one action? Why did the 26 insurance companies get together to join in this action? Because many of these claims, Your Honor, are small claims. And as a matter of economics, it is much more economical to group them when you have a common defect. And you can group a number of small claims, put them together, then bring all those claims to the domicile of the defendant and try them in that location. It also promotes judicial economy because, for example, there are, I believe, about 45 claims in this matter that simply arise in California. If we were to go ahead and file those throughout California, and many of these claims have a higher dollar value, then we would potentially be looking at some type of a coordinating proceeding so that we didn't get inconsistent results. By doing it this way, we have all of the claims in one locale, again, the domicile of the defendant, and it can be controlled by one judge and litigated. It saves judicial resources. It's much more economical all around. Now... It's a product defect action. Your assertion is that there's one defect that you can prove by most of the discovery taking place at the place of manufacturing the product. Correct, Your Honor. There is a common defect throughout all of these claims, a very specific defect. And we simply have failures in numerous locales throughout the United States, predominantly California. So if you prove that, then what you're doing is, then everybody has to prove up their damages. That is correct. The damages would have to be proven separately. Individually. Yes. The damages, of course, have already been paid. Now, I believe Your Honor raised the question of venue. Of course, in the federal system, venue is jurisdictional. But in California, of course, venue used to be jurisdictional, but now is simply a matter of statute. And it is clear that in this case, jurisdiction lies, according to California law, in the San Bernardino Superior Court. The defendants in this case, appellants in this court, did challenge venue, but they did it by way of a demurra, which was an improper vehicle, because, of course, the grounds for demurra are statutory. And they do not include venue. And therefore, the demurra was overruled, simply because they chose to attack venue on an improper basis. They then chose to attack venue by bringing a specific motion, which, of course, by then was untimely. In our experience, Your Honor, most defendants who are faced with these types of lawsuits welcome the opportunity to litigate all the claims together at their place of domicile. It is far cheaper for them to do it that way. In this particular case, the defendants took another attack. They employed a strategy to break the case up with a view to, I think, forcing the plaintiffs to dismiss many of the claims. That answers the court's question on that. Again, the only parties that have monetary interests in this case are the plaintiff insurers. The insureds are not named plaintiffs. Now, there has been much said about the fact that the insureds themselves are named in the complaint. Of course, they're named in the complaint. In order to plead this case properly, the subregees have to demonstrate from whence their rights to proceed are derived. And that is why the subregors are named in the complaint, but they are not named in their capacity as plaintiffs. There's only one plaintiff here, and that is the insurer that has sustained the loss. I'm just curious. What is the range of damages, say, of these 145 homeowners? It will vary, Your Honor, from, I think, a low of about $800 up to, I believe, the highest is in the high twos. The Zari case that came up has actually a combination. That's $410,000. But in Zari, which was discussed, it was an unusual case where we had Mr. Zari had actually got double coverage on his home, and therefore two insurers stepped in to pay the loss and had to pro rata the ultimate amount of the loss. That was a situation that I think counsel raised, and it may not have been clear, but... So the highest was in the 2000s? No, no, no. The highest was about, I think, about... The Zari case was $410,000. Right. But what about if our plaintiff's here, the 145 insured? You said a low of $800 and high end would be in what range? Oh, at least the high twos to $300,000. But Zari is part of the consolidated action. It's one of the... Is that $200,000 or... Yes. Oh. Yes. That's a big range from $800 to $200,000. Okay. Yes, it spans the range. Mm-hmm. I think, too, that if the court had any inclination to actually start to determine that these sub-regards are plaintiffs, then it imports a whole host of difficulties by elevating them to their stature. Once you start calling sub-regards plaintiffs, it raises issues of attorney-client relationship. It raises issues as to their standing as far as responding to discovery. It even raises issues as to the potential application of judgments if the case was lost. The court does not need to go there. In here, all the court has to do is to follow the guidance of the Supreme Court. And even though Mississippi was a different type of case, a parent's patriae case, it is clear that the principles, that the interpretation by the Supreme Court is directly applicable here. So does the total amount of the claims exceed $5 million at this point? It does, Your Honor. The total amount has continued to rise since the actual last pleading, which was the Second Amendment complaint. Now the amount in issue is about $8.4 million. Because more people have joined? No, because when we filed, not all of the losses were fully adjusted.  And so that is why the numbers have continued to increase. So they meet that $5 million threshold part of the mass action. It's just the numerosity that's the problem here. Well, yes. If the court, clearly the amount in issue would exceed the $5 million threshold. We're simply concerned here with the fact that we have 26 named plaintiffs. They are the only plaintiffs in this action. And I don't believe the court should go down the path of somehow importing the definition of subrigore into what we know as a standard definition. Anything further? No, Your Honor. Thank you for your time. Thank you very much. I appreciate it. Thank you, Your Honor. Briefly, I think a lot of these issues are at this time not relevant. It shouldn't, if the court is going to say if these losses were not adjusted and the homeowners still have skin in the game, we don't know that. All we have is a complaint and removal is determined at the time the complaint is filed. There's been no discovery. We don't have an opportunity to come back later. That's not a new pleading, a new filing, to say, oops, we've just realized all 145 of these people have a financial interest in the outcome of this case and now we're going to remove it to federal court. Now's the time we have to make that decision. We also are not saying that they have to be named plaintiffs. That is not our argument. Our argument is the clear language of the statute does not require it. This is CAFA, the Class Action Fairness Act. Small numbers of people bringing claims on behalf of many and the claims that you are hearing of we are bringing these claims on behalf of all of these people and we believe this is their argument that if they prove one thing, it establishes it for everybody, that's the hallmark of a class action without having to meet its requirements. That's what council wants to get in this case, to bring the equivalent of a class action, avoid removal under CAFA and claim that all we have to do is say, well, we think one single issue affects everybody and we have photos of those coupling nuts. We have some that look like some gorilla tightened it with a monkey wrench. It's been torqued beyond recognition. So we have individual defenses to these and to claim we don't get to do that. And I tend to agree with you that this is conceptually very akin to a class action, but that reads out Congress having added to this statute a mass action involving common questions of law or fact. The Congress has done that. What Congress is doing is making more cases removable to federal court, not less, more. Not just if a class action, but if you try to bring it as a mass action, because sometimes we'll see complaints with a hundred people listed on it as plaintiffs and saying, well, we're just bringing this as a single case. That's removable. But I'm addressing your argument that this is conceptually similar to a class action. Congress provided for that to happen. Well, the discovery, when we talk about discovery, because the court raised this issue and council says, yes, damages, they can see damages have to be proven individually, but somehow without any reference to the homeowners or any discovery from the homeowners, how was that done without inspecting the property, without asking the homeowner who installed this? How was it installed? What type of, you mean the fences to how, whether it was cracked when at that time, whether it was even in the property. We don't even have a chain of custody. How do we know that supply hose came from that house? So to say, well, you don't get to defend yourself on that. Just take it on our word. That doesn't work. Of course we have that opportunity. What if it's not paid? If that was not paid and the homeowners still had a financial interest? Well, we don't know at this point and they are not the real parties and interests. I have to disagree with council on this. The courts make clear standing under a subrogation claim is the standing of the insured. If the insured wouldn't have standing to bring that case, the insurer does not under a subrogation claim. None of the insurer's rights expand beyond those that the homeowner himself, the subrogore himself has. So any defenses to the subrogore, including standing or anything else are available. That is the situation. So they are not the real parties and interests. The real parties and interests are, or they would be the only one who you'd look at and say, if you have standing, if you have standing, then there's standing. If you have jurisdiction because of diversity, then you have standing or jurisdiction. No, you don't. If there's no diversity with the homeowner, there would be no diversity jurisdiction, even if there was with the insurer. In their cases, even the US Supreme Court has said that. We've cited that in our brief. So our, you know, if the Supreme Court, Your Honor, Judge Reinhold has said that CAFA, RESPA has concurrent jurisdiction and this court is faced with a case where the statute specifically deals with a section on exclusively federal court jurisdiction. I don't think we'd be bound by that overly broad language, even if it came from the Supreme Court. I understand the Supreme Court focused on that part of the statute of 100 or more persons whose claims are trying to be tried, not the monetary relief claims of 100 or more persons. It is a fundamentally different case. That is what we urge the court, that it is, if you look at the plain language of the statute, the way it is written, there is nothing in CAFA that requires 100 people bring monetary relief claims. That is not the way it was worded. It was not the way it was worded. It is worded the reverse. It's worded to mirror a class action that a small number of key people could bring monetary relief claims on behalf of 100 or more. That's what would make it a class action. It meets the numerosity requirement. That's the same thing in a regular Rule 23 class action. I'm bringing it. Are there more than 30 other people or how many 40 other people that are going to be in this class that I'm representing? Am I bringing claims on behalf of 100 or more persons? I think we understand your point. Anything further I may address for the court? I think that's more than enough. Thank you very much, Your Honor. Thank you. I appreciate your time. The case is argued will be submitted.
judges: Gilman, Reinhardt, Wardlaw